## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| **TERRY DALE TILMON** | **CIVIL ACTION NO. 22-5896** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **NICOLE SOIGNIER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Terry Dale Tilmon, a prisoner at Madison Parish Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately November 4, 2022, under 42 U.S.C. § 1983. He names the following defendants: Lieutenant Nicole Soignier, Sergeant Ethan Soignier, Sergeant Rebecca Shaw, Chief Duchesne, Sheriff Gilley, Richland Parish Police Jury ("RPPJ"), Secretary James LeBlanc, Warden Wade, the Louisiana Department of Corrections ("LDC"), and the Regional Disciplinary Board.[1]

For reasons below, the Court should retain the following claims:

○ that in retaliation for Plaintiff's grievances concerning the confiscation of his watch, Nicole Soignier tested him for drugs twice in less than sixty days, falsely charged him with "contraband," intentionally switched his urine sample with another inmate's sample, and placed him in administrative segregation;

○ that Nicole and Ethan Soignier performed harassing, non-random drug tests/urinalyses on him;

○ that, under a state law conversion theory, on January 26, 2022, Lieutenant Nicole Soignier destroyed his headphones and Sergeant Ethan Soignier destroyed his remaining property, including clothing, religious books, C.D. players, a cassette player, compact discs, cassettes, art supplies, sharpies, and one silver Fossil watch;

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

○ that, under Section 1983, Sergeant Shaw, Chief Duchesne, Sheriff Gilley, and Warden Wade exposed Plaintiff to unreasonably high levels of e-cigarette vapor and tobacco smoke;

○ that Chief Duchesne, Warden Wade, and Sheriff Gilley were negligent in failing to create a non-smoking policy and failing to control the introduction of tobacco;

○ that Sheriff Gilley was negligent in failing to "create protocol for the eradication of toxic black molds and mildew" and that Warden Wade was negligent in failing to remedy the black mold and mildew; and

○ that Sheriff Gilley and Warden Wade violated Plaintiff's First Amendment rights to receive books, magazines, periodicals, and mail from family or friends.

The Court should dismiss the claims listed below in the "Recommendation" section of this Report and Recommendation.

## **Background**

Plaintiff was transferred from Union Parish Detention Center to Richland Parish Detention Center ("RPDC") on October 22, 2021. [doc. # 1, p. 4]. His claims here arise from actions or omissions at RPDC. He was transferred from RPDC to Franklin Parish Detention Center on June 15, 2022. *Id.* at 11.

Plaintiff states that when he arrived at RPDC on October 22, 2021, Lieutenant Nicole Soignier confiscated his property, including his books, C.D. players, and art supplies without giving him a property inventory receipt. [doc. # 1, p. 4]. On November 4, 2021, Plaintiff filed a grievance about his property. *Id.* at 5. Sergeant Rebecca Shaw responded: "I reviewed your grievance. I spoke to you about mailing your property home. You will have a complete inventory of whatever you are sending home." *Id.*

Plaintiff claims that on November 15, 2021, Nicole Soignier falsely charged him via rule violation report with "contraband." [doc. # 9, pp. 3, 10]. He claims that Nicole Soignier charged

2

him in retaliation for his verbal grievance against her concerning the confiscation of his watch. [doc. # 9, p. 3].

Plaintiff alleges that the Regional Disciplinary Board ("RDB") remanded the rule violation report to Nicole Soignier, instructing her to remove another inmate's name from the report.  [doc. # 9, p. 10].  Plaintiff alleges that the RDB lacked the authority to "have the contents of the report changed[.]"  *Id.*  He claims that the RDB violated his right to procedural due process when it denied his motion to produce exonerative camera footage.  *Id.*  He claims that his parole eligibility date was delayed from November 15, 2021, until May 25, 2023, "because of Nicole's conduct as well as the disciplinary board's unlawful procedures."  *Id.*

Plaintiff claims that in retaliation for his grievances, Lieutenant Nicole Soignier, Sergeant Ethan Soignier, and Chief Duchesne conspired to target him for drug testing without reasonable suspicion.  [doc. #s 1, p. 14; 9, pp. 3-4].  He maintains that the testing "is mandated to be random[.]"  [doc. # 1, p. 14].  Other offenders were never selected for drug screening, but he was selected three times in less than sixty days.  [doc. # 9, p. 4].

Plaintiff claims that Chief Duchesne, Sergeant Shaw, and Sheriff Gilley exposed him to unreasonable levels of environmental tobacco smoke and electronic cigarette vapor.  [doc. #s 1, p. 13; 9, pp. 1-4].  On December 16, 2021, Plaintiff moved to "D dorm" to try and avoid the smoke and vapor, but D dorm "was no different than the other dorms."  [doc. # 9, p. 1].  The smoke and vapor caused Plaintiff nose bleeds, sleeplessness, headaches, shortness of breath, coughing, chest pain, dizziness, fear, anguish, emotional distress, and a rise in blood pressure which allegedly exposed him to risks of stroke, heart disease, colorectal cancer, and gastrointestinal disorders.  *Id.* at 3.

Plaintiff claims that Chief Duchesne, Warden Wade, and Sheriff Gilley were negligent in failing to create a non-smoking policy.  [doc. # 9, pp. 3-4, 6-7].

Plaintiff claims that Lieutenant Nicole Soignier and Sergeant Ethan Soignier destroyed his property in retaliation for his grievances against Lieutenant Soignier.  [doc. # 1, p. 13].

Plaintiff claims that on March 31, 2022, Chief Duchesne and Sergeant Shaw violated his right to equal protection when they (1) ordered him to send his watch home yet (2) did not order other prisoners to send their watches home.  [doc. #s 1, p. 13; 9, pp. 1-2].  "[T]here was no rule or regulation prohibiting the possession of a watch, nor was [Plaintiff] afforded an administrative hearing prior to deprivation."  [doc. # 9, p. 2].  Plaintiff claims that "Shaw's actions were in retaliation for his filing of numerous grievances regarding the destruction of his property among other things."  [doc. # 9, p. 2].

Plaintiff claims that he was subjected to unconstitutional conditions of confinement, including mildew, toxic black mold, dust, and the stench of feces, urine, and flatus.  [doc. # 1, pp. 14-15].  He faults Warden Wade.  [doc. # 9, p. 7].

Plaintiff faults Sheriff Gilley for not allowing inmates "adequate time for recreation and exercise."  [doc. # 9, p. 4].

Plaintiff claims that he was unable "to receive any correspondence from family or friends . . . ."  [doc. # 1, p. 15].  He also claims that he was unable to "receive books, magazines, or periodicals of any sort . . . ."  *Id.* at 15.  He faults Warden Wade.  [doc. # 9, p. 7].

Plaintiff claims that Sheriff Gilley was negligent by (1) failing to eradicate mildew and toxic black mold; (2) failing to secure mental health services; (3) failing to create a policy allowing Plaintiff to receive books, magazines, and correspondence from family and friends; and (4) failing to end the practice of copying legal mail.  [doc. #s 1, p. 17; 9, p. 5].

Plaintiff claims that Sergeant Shaw and Chief Duchesne negligently destroyed his property by failing to properly secure it "with notifications that [the] property was approved to be sent home[.]"  *Id.* at 16.

Plaintiff claims that the LDC and Secretary James LeBlanc failed to monitor or supervise Sheriff Gilley and the RPPJ.  [doc. #s 1, p. 16; 9, p. 5].  Plaintiff also claims that the LDC and Leblanc approved his transfer to RPDC "with full knowledge that" RPDC sold e-cigarettes and cigarettes.  [doc. # 9, p. 6].

Plaintiff claims that the RPPJ breached its duty to maintain "a good and sufficient jail" by failing to train staff in recognizing mental illness and failing to provide chemicals to remove black toxic mold and dirt.  [doc. #s 1, p. 18; 9, p. 5].

Plaintiff alleges that RPDC lacks mental health care.  [doc. # 9, p. 9].  He claims that Sheriff Gilley and Warden Wade "are responsible for policy implementation" with respect to "lack of mental health care . . . ."  *Id.*

Plaintiff seeks compensation, nominal damages, and punitive damages.  [doc. # 1, p. 18].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis.  As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2]  *See Martin v. Scott,* 156 F.3d

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations

578, 579-80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis*, his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

---

of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

7

**2. Conspiratorial Drug Testing**

Plaintiff claims that in retaliation for his grievances, Lieutenant Nicole Soignier, Sergeant Ethan Soignier, and Chief Duchesne conspired to target him for drug testing without reasonable suspicion.  [doc. #s 1, pp. 7, 14; 9, pp. 3-4].  Plaintiff maintains that the testing "is mandated to be random[.]"  [doc. # 1, p. 14].  Other offenders were never selected for drug screening, but he was selected three times in less than sixty days.  [doc. # 9, p. 4].

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'"  *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (*quoting Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)).  "To establish a conspiracy claim under § 1983, the plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that such an alleged deprivation actually occurred."  *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019).  "Charges as to such conspiracies must be based on substantial and affirmative allegations, and no mere gossamer web of conclusion or inference . . . trifles light as air . . . will suffice[.]"  *Crummer Co. v. Du Pont*, 223 F.2d 238, 245 (5th Cir. 1955).

Here, Plaintiff does not allege that that Defendants agreed to commit an illegal act.  His bald allegation of conspiracy is insufficient: "[c]onclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983."  *See Montgomery*, 759 F. App'x at 314; *see also Barber v. Quarterman*, 437 F. App'x 302, 304 (5th Cir. 2011) (finding no constitutional violation where a

plaintiff asserted "that officials falsified a report in violation of his right to due process and that others conspired with them to falsify the report."). The Court should dismiss these claims.

### 3. Retaliation

To prevail on a retaliation claim, a plaintiff must prove (1) the exercise of a specific constitutional right; (2) the Defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which in this context means that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir. 1998). Courts must "carefully scrutinize" retaliation claims to "assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).[3]

A plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995). "Mere conclusory allegations of retaliation are insufficient[,] . . . a plaintiff must allege more than his personal belief that he has been the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). With respect to the third prong above, "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. 2013).

---

[3] "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Id.* (*quoting Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

A. <u>Retaliation Claims Against Nicole Soignier</u>

Plaintiff alleges that in retaliation for his grievances concerning the confiscation of his watch, Nicole Soignier tested him for drugs twice in less than sixty days, falsely charged him with "contraband," intentionally switched his urine sample with another inmate's sample, and placed him in administrative segregation.  [doc. #s 1, pp. 6-8; 9, pp. 3, 10].  To date, Plaintiff has not been convicted of the contraband charge, but the charge did delay his parole "consideration date" from November 15, 2021, until May 25, 2023.

Construing these allegations liberally and in Plaintiff's favor, the Court should retain this claim against Nicole Soignier.  Plaintiff alleges that he exercised a constitutional right when he filed a grievance.  He presents a chronology of events from which retaliation may be plausibly inferred: he filed a grievance on November 4, 2021, Nicole Soignier tested him for drugs on November 15, 2021, and again weeks later, and on November 15, 2021, she falsely charged him with "contraband" and placed him in administrative segregation.[4]  Combined, her alleged actions are (plausibly) retaliatory adverse acts capable of deterring a person of ordinary firmness from further exercising his constitutional rights.[5]

---

[4] Plaintiff's chronology satisfies the second and fourth prongs of the standard above.  *See Petzold v. Rostollan*, 946 F.3d 242, 252 (5th Cir. 2019) ("To prove intent and causation, the prisoner must at least establish a 'chronology of events from which retaliation may be plausibly inferred.'").

[5] *See, e.g., Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) ("[W]e think a threat to change drug test results would deter many people of ordinary firmness from proceeding with litigation."); *Evans v. Vinson*, 427 F. App'x 437 (6th Cir. 2011) (Prison officials' actions in

B. Retaliation Claim Against Ethan Soignier

The Court should dismiss Plaintiff's retaliation claim against Ethan Soignier.  Plaintiff alleges only that Ethan retaliated by conducting one urinalysis.  [doc. # 9, p. 4].  This action does not constitute an adverse act capable of deterring a person of ordinary firmness from further exercising his constitutional rights.[6]

C. Retaliation Claim Against Sergeant Shaw

Plaintiff alleges that Sergeant Shaw pressured him to send his watch home.  [doc. # 9, p. 1].  On March 21, 2022, Shaw "had [Plaintiff] sign a property release form to release his watch." *Id.*  Plaintiff claims that "Shaw's actions were in retaliation for filing of numerous grievances regarding the destruction of his property among other things."  *Id.* at 2.

The Court should dismiss this claim because Shaw's actions—pressuring Plaintiff to send his watch home and instructing Plaintiff to sign a property release form—do not reflect adverse acts capable of deterring a person of ordinary firmness from further exercising his constitutional rights.  In fact, Plaintiff suggests that he favored Shaw's instruction to sign the release form, stating that "Shaw could have done the same in regards to [Plaintiff's] property that the Soigniers destroyed which suggests [Plaintiff] had someone to release his property to."  *Id.* at 1.

---

administering drug test and placing inmate, who assisted fellow inmate in filing complaint with prison administration, in administrative segregation pending investigation into possible drug activity was adverse action).

[6] As above, Plaintiff does not plausibly allege an agreement to conspire between Ethan and Nicole.

Further, Plaintiff does not produce direct evidence of retaliation or allege a chronology of events from which retaliation may be plausibly inferred.  He states that Shaw retaliated in response to his grievances, but he does not specify which of his many purported verbal and written grievances to which he refers.  For instance, he states that he filed one grievance on November 4, 2021.  [doc. # 1, p. 5].  But he alleges that Shaw retaliated almost five months later. This does not reflect a "tight chain of events" between the predicate events and the alleged retaliatory acts.  *See  Petzold v. Rostollan*, 946 F.3d 242, 253 (5th Cir. 2019) ("There was a 'tight[ ] chain of events'" between the predicate events and alleged retaliatory acts—ranging from less than an hour to almost a month.").

**4. Fourth Amendment**

Plaintiff claims that Nicole and Ethan Soignier lacked reasonable suspicion to perform non-random drug tests/urinalyses on him.  [doc. #s 1, p. 14; 9, pp. 3-4].

"[T]he collection and testing of urine" are "searches under the Fourth Amendment." *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 617 (1989).  However, "The Supreme Court has never required individualized suspicion in order to conduct urinalysis."  *Norris v. Premier Integrity Sols., Inc.*, 641 F.3d 695, 701 (6th Cir. 2011); *see Holm v. Casiana*, 759 F. App'x 500, 502 (7th Cir. 2019) ("[T]he Supreme Court has ruled that strip and body cavity searches of prisoners are permissible in certain circumstances even with *no* suspicion of wrongdoing."); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) ("[T]he Fourth Amendment imposes no irreducible requirement of [individualized] suspicion[.] . . . In many respects, we think, testing based on "suspicion" of drug use would not be better, but worse."); *Skinner,* 489 U.S. at 624 ("[A] showing of individualized suspicion is not a constitutional floor, below which a search must be presumed unconstitutional.").

"The Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable. . . . [T]he permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Skinner*, 489 U.S. at 619 (internal citations and quotations omitted). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

Here, Plaintiff does not allege that any urinalysis was unreasonable in scope, manner, or place. Rather, Plaintiff only presents allegations concerning the justification for the urinalyses. Plainly, "[c]ontrolling the flow of contraband and ensuring institutional security are legitimate penological objectives." *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 368 (5th Cir. 2017).[7] However, the Court must first obtain Defendants Nicole and Ethan Soignier's justifications (if any) for the searches before analyzing Plaintiff's claims.[8] *See McCreary v. Richardson*, 738 F.3d 651, 657 (5th Cir. 2013), *as revised* (Oct. 9, 2013) (quotation marks and citation omitted) ("We defer to the judgment of correctional officials *unless the record contains*

---

[7] *See Northington v. Furlong*, 113 F.3d 1246 (10th Cir. 1997) ("Urine testing is a long-accepted method of ensuring prison security[.]").

[8] "Proving the reasonableness of an inmate search, however, imposes only a light burden on prison officials, [b]ecause a prison administrator's decisions and actions in the prison context are entitled to great deference from the courts." *Parker v. Woods*, 834 F. App'x 92, 95 (5th Cir. 2020) (quotation marks and citation omitted).

*substantial evidenc*e showing their policies are an unnecessary or unjustified response to problems of jail security.") (italics added); *see also Thompson v. Souza*, 111 F.3d 694, 703 (9th Cir. 1997) (opining that courts should ascertain whether drug tests were intended to harass or were attempts "to curb the use and flow of drugs among persons in a volatile environment peculiarly susceptible to drugs.").[9]

The Court should retain these claims.

5. Destruction or Disposal of Property

When Plaintiff arrived at RPDC on October 22, 2021, Lieutenant Nicole Soignier confiscated his property, including books, C.D. players, and art supplies, without giving him a property inventory receipt.  [doc. # 1, p. 4].  On October 26, 2021, Plaintiff asked Chief Duchesne "about sending his property home[,]" and Duchesne told him that the "facility did not have the appropriate boxes to mail the items" but Plaintiff "would have ample time to mail the items before" they were disposed.  *Id.* at 4-5.  On November 4, 2021, Plaintiff "submitted electronic correspondence to Sgt. Rebecca Shaw about sending the property home[,]" and Shaw responded, "You will have a complete inventory of whatever you are sending home."  *Id.* at 5.

Plaintiff claims that on January 26, 2022, Lieutenant Nicole Soignier destroyed his headphones and Sergeant Ethan Soignier destroyed his remaining property, including clothing, religious books, C.D. players, a cassette player, compact discs, cassettes, art supplies, sharpies, and one silver Fossil watch.  [doc. # 1, p. 7].

Plaintiff suggestively claims that on March 11, 2022, Chief Duchesne forced him to send another watch home.  [doc. # 1, p. 11].  He also suggestively claims that on March 31, 2022,

---

[9] Plaintiff alleges that the drug tests/screenings were harassment.  [doc. # 1, p. 7].

Sergeant Shaw forced him to send another watch home.  [doc. # 9, p. 1].  He claims that he "was not afforded an administrative hearing prior to deprivation." *Id.* at 2.

A. Procedural Due Process

A post-deprivation tort cause of action in state law is, under the *Parratt/Hudson*[10] doctrine, sufficient to satisfy the requirements of due process when a plaintiff alleges that he has been deprived of his property without due process of law by the negligent or intentional actions of a state officer that are "random and unauthorized."[11] *Sheppard v. Louisiana Bd. of Parole*, 873 F.2d 761, 763 (5th Cir. 1989) (quoting *Hudson*, 468 U.S. at 533-35).  Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property.  *Copsey v. Swearingen*, 36 F.3d 1336, 1342-43 (5th Cir. 1994); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984) (*citing* Louisiana Civil Code Article 2315 and observing that "Louisiana law affords an opportunity to redress intentional torts under the same section of the Code by which negligence is remedied."); *Fuller v. XTO Energy, Inc.*, 989 So. 2d 298, 302 (La. Ct. App. 2008) (recognizing the tort of conversion).[12]

---

[10] *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327 (1986).

[11] "The doctrine is meant to protect the state from liability for failing to provide predeprivation process in situations where it cannot anticipate the need for such process (when actions are random and unauthorized)."  *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996).

[12] *See also Seay v. Hutto*, 483 F. App'x 900, 902 (5th Cir. 2012) ("But [the plaintiff] does not allege that prison officials were delegated authority under state law, regulation, or policy to

Here, Plaintiff does not allege that he was deprived of his property by anyone acting under an official policy, custom, or procedure; rather, he describes random and unauthorized action.  *See Hernandez v. Cooper*, 2021 WL 5444742, at *1 (5th Cir. Nov. 19, 2021) (holding, where the plaintiff alleged that his property was stolen because an officer violated procedure for packing inmate property, that *Parratt-Hudson* prevented the plaintiff "from pursuing a confiscation-of-property claim using § 1983.").[13]  For instance, he maintains that "there was no rule or regulation prohibiting the possession of a watch . . . ."  [doc. #s 1, p. 11; 9, p. 2].  While

_____

direct that a prisoner's property be stolen by other inmates.  He therefore has not alleged that his property was taken pursuant to an official policy that would render the *Parratt/Hudson* doctrine inapplicable."); *Suria v. Wathen*, 616 F. App'x 175 (5th Cir. 2015) (affirming dismissal of a claim that correctional officers lost an inmate's personal property through gross negligence and dereliction of duty, on grounds that "negligent conduct is not actionable under § 1983."); *Krause v. Leonard*, 352 F. App'x 933 (5th Cir. 2009) (prisoner's claim that police lost property that was inside his impounded automobile and allowed thieves to steal from his trailers during his time in jail was not cognizable under Section 1983 because state law provided a meaningful post-deprivation remedy).

[13] *See also Butler v. Anderson*, 2021 WL 4520312, at *1 (5th Cir. Oct. 1, 2021) ("Butler alleged that his property was lost because Anderson failed to follow the prison policy to store, tag, and safeguard it as required when he left the Ferguson Unit.  The allegations concerning the prison official's actions are exactly the type of random and unauthorized conduct to which the *Parratt/Hudson* doctrine was designed to apply."); *Meeks v. Nash*, 2021 WL 4515396, at *1 (5th Cir. Oct. 1, 2021).

Sergeant Shaw did allegedly tell Plaintiff that Sergeant Soignier destroyed the property under a policy which affords inmates ten days to send property home, Plaintiff disagrees and maintains that Nicole and Ethan Soignier destroyed his property in retaliation for his grievances.[14] [doc. # 1, pp. 5-7]. Accordingly, the Court should dismiss Plaintiff's claims that he was denied procedural due process.

B. Negligence

Plaintiff claims that "the proximate cause of the destruction of his personal property was the negligent failure of Sgt. Rebecca Shaw and Chief Duchesne to properly secure same with notifications that property was approved to be sent home; especially after both defendants assured Plaintiff his property could be sent home." [doc. # 1, p. 16].

To prevail under a negligence theory, the plaintiff must prove five elements:

(1) the defendant had a duty to conform his conduct to a specific standard (the duty element);

(2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element);

(3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);

(4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and

(5) actual damages (the damages element)[.]

*Harris v. Boh Bros. Constr. Co., LLC*, 2021 WL 2134754, at *11 (La. 4 Cir. May 26, 2021).

Here, Plaintiff's negligence claims against Duchesne and Shaw are conclusory because he does not plausibly allege how Defendants' conduct or inaction meets the elements of negligence set forth above. *See Gressett v. New Orleans City*, 779 F. App'x 260, 261 (5th Cir.

---

[14] The undersigned addresses this retaliation claim in a separate analysis.

2019) ("Gressett's negligence pleadings also fail to state a claim because his complaint only contains oblique references to the police department's and the officer's negligence without outlining the elements for such a claim under Louisiana law."). Specifically, Plaintiff does not allege that defendants had any specific legal duty to act how he claims they failed to act. *See Duncan v. Wal-Mart La., L.L.C.*, 863 F.3d 406, 409 (5th Cir. 2017) (explaining that a plaintiff must show that the defendant must conform to a "specific standard" to properly plead a negligence claim); *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006). As in *Gressett*, Plaintiff presents only "bare references to negligence[,]" which are insufficient to state a plausible claim. *Gressett*, 779 F. App'x at 261.

Even assuming Plaintiff met the first element above, he does not plausibly allege that Defendants' inaction was a cause-in-fact of his harm. To establish cause-in-fact, a plaintiff must prove that his injuries would not have occurred but for the defendant's substandard conduct. *Efthemes v. Amguard Ins. Co.*, 2022 WL 3684611, at *3 (5th Cir. Aug. 25, 2022). Here, Plaintiff alleges that Ethan and Nicole Soignier intentionally destroyed his property in retaliation for his grievances. [doc. # 1, pp. 5-7, 13]. Thus, he does not allege that "but for" Shaw and Duchesne's failure to place notifications on his property, his property would not have been destroyed. The Court should dismiss this negligence claim.

C. Conclusory Claim

Plaintiff alleges that on March 11, 2022, Chief Duchesne told him he had ten days to send his watch home. [doc. # 1, p. 11]. In an amended pleading, Plaintiff alleges that on March 31, 2022, Sergeant Shaw "had" him "sign a property release form to release his watch." [doc. # 9, p. 1]. Plaintiff claims that he was not "afforded an administrative hearing prior to deprivation." *Id.* at 1.

With respect to his allegation concerning the lack of an administrative hearing, Plaintiff does not, as explained above, present a plausible procedural due process claim.  To the extent he invokes this Court's supplemental jurisdiction and attempts to present a negligence or tort theory, his allegations are too vague to state a plausible claim.[15]  First, he does not state whether he is discussing the same watch in both allegations; in fact, he mentions that he had four watches.  Second, he does not allege if either defendant ever, for example, converted, stole, altered, destroyed, or deprived him of a watch.  Otherwise stated, he does not definitively state he suffered any harm.  The Court should dismiss these ostensible state law claims.

### D. Equal Protection

Plaintiff frames the same allegations above against Chief Duchesne and Sergeant Shaw as a violation of his right to equal protection.  [doc. #s 1, p. 13; 9, pp. 1-2].  He claims that Duchesne and Shaw did not order other prisoners to send their watches home.  *Id.*

To establish an equal protection claim, a plaintiff must allege that defendants treated "two or more classifications of similarly situated persons" differently.[16]  *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (*quoting Gallegos–Hernandez v. U.S.*, 688 F.3d 190,

---

[15] The undersigned addresses Plaintiff's equal protection and retaliation theories in other sections of this Report and Recommendation.

[16] "[T]here is no precise formula to determine whether an individual is similarly situated to comparators."  *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 233 (5th Cir. 2012) (internal quotation marks and quoted source omitted).  "The inquiry is case-specific and requires [courts] to consider the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision."  *Id.*

195 (5th Cir. 2012)).  "Once that threshold element is established, the court then determines the appropriate level of scrutiny to apply."  *Id.*  "Strict scrutiny is required if the [] classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution."  *Id.* at 354 (*quoting Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995)).  "If neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relation to a legitimate governmental purpose."  *Id.*  "Under rational basis review, differential treatment must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Hines v. Aldredge*, 783 F.3d 197, 202-03 (5th Cir. 2015) (internal quotation marks omitted) (*quoting Madriz–Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004)).

Here, Plaintiff does not plausibly allege that the other inmates were similarly situated. While he formulaically alleges that they were similarly situated, he does not offer any specific facts to support his claim.  At best, he presents two comparators who were not ordered to send their watches home.  But he does not, for instance, explain whether the others possessed similar watches, were housed in the same location, possessed the same number of watches, had a similar sentence, or shared his status in the facility (e.g., trustee vs. non-trustee), his work history, his affiliations (if any), his criminal, behavioral, or institutional history, or any other factors that

prison officials, in their discretion, could consider in rendering a decision.[17, 18]

---

[17] *See Rowe v. Cuyler*, 534 F. Supp. 297, 301 (E.D. Pa.), aff'd, 696 F.2d 985 (3d Cir. 1982) ("[N]o two prisoners, being different human beings, will possess identical backgrounds and characters.  Indeed, it is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics."); *Stevenson v. Louisiana Board of Parole*, 265 F.3d 1060 (5th Cir. 2001) ("Although [the plaintiff] asserts that the other prisoners who were eligible . . . were similarly situated to him, Stevenson has not demonstrated that their criminal records and offenses were sufficiently similar to his circumstances . . . [and it] is also obvious that the discretionary decision to grant parole must be made on a case-by-case basis based on the unique circumstances of each prisoner."); *Hernandez v. Velasquez*, 522 F.3d 556, 563 (5th Cir. 2008) (noting that prison officials may use segregated confinement "simply because the prison has no other space, wishes to protect some prisoners from others, wishes to keep prisoners isolated from one another in order to minimize the risk of riots or other disturbances, wishes to prevent the spread of disease, and so forth.") (*quoting Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997)).

[18] *See Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018) ("Rountree's equal-protection claim fails because he did not sufficiently allege that he has been treated differently from others similarly situated.  His complaint generally alleges that other similarly situated individuals were treated differently, but he points to no specific person or persons and provides no specifics as to their violations.").

The Court should dismiss this claim.

E. Responding to Grievances

Plaintiff claims that Warden Wade did not satisfactorily respond to his grievances concerning the destruction of his religious books. [doc. # 9, p. 7]. He states, "Wade's inaction suggested that he either didn't care or condoned Nicole's conduct." *Id.*

A prisoner, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

In *Sandin v. Conner*, 515 U.S. 472, 475 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. *See Taylor v. Cockrell*, 92 Fed. App'x. 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated his constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."). Here, accordingly, the Court should dismiss Plaintiff's claim.

**F. Other State Law Claims**

As above, Plaintiff claims that on January 26, 2022, Lieutenant Nicole Soignier destroyed his headphones and Sergeant Ethan Soignier destroyed his remaining property, including

22

clothing, religious books, C.D. players, a cassette player, compact discs, cassettes, art supplies, sharpies, and one silver Fossil watch.  [doc. # 1, p. 7].

Construing these allegations liberally and in Plaintiff's favor, the Court should retain these conversion claims under its supplemental jurisdiction.  *See Wellan v. Comfort Innovations, LLC*, 305 So. 3d 883, 891-92 (La. App. 1 Cir. 6/12/20) ("Conversion is committed when . . . the movable is altered or destroyed . . . .); *see also Aymond v. Citizens Progressive Bank*, 277 So. 3d 477, 497 (La. Ct. App.), *writ denied,* 280 So. 3d 602 (La. 2019).

6. Procedural Due Process in Relation to Disciplinary Charge

Plaintiff claims that on November 15, 2021, Nicole Soignier falsely charged him via rule violation report with "contraband."  [doc. # 9, pp. 3, 10].  The RDB remanded the rule violation report to Nicole Soignier, instructing her to remove another inmate's name from the report.  [doc. # 9, p. 10].  Plaintiff alleges that the RDB lacked the authority to "have the contents of the report changed[.]"  *Id.*  He claims that the RDB violated his right to procedural due process when it denied his motion to produce exonerative camera footage.  *Id.*  Plaintiff has not "received any sanctions."  *Id.*  However, he claims that his parole eligibility date was delayed from November 15, 2021, until May 25, 2023, "because of Nicole's conduct as well as the disciplinary board's unlawful procedures."  *Id.* at 3, 10.

Ultimately, the result of the alleged false disciplinary charge did not implicate a protected property or liberty interest; thus, Plaintiff does not state a plausible claim.  *See Carter v. Brown*, 772 F. App'x 67, 68 (5th Cir. 2019) (finding, where the plaintiff argued "that he was falsely charged and convicted at a hearing that violated established procedures, [and] relied on false evidence," that the plaintiff did not allege "a due process violation" because his punishment did

not "implicate a protected liberty interest[.]"); *Lasater v. Herrera*, 729 F. App'x 362, 363 (5th Cir. 2018) (finding, where the plaintiff alleged that prison officials drafted a false disciplinary report and violated his due process rights by destroying the physical evidence, that the plaintiff's rights were not violated because his punishment was not atypical).

In *Young v. LeBlanc*, 2022 WL 2072861, at *4 (5th Cir. June 9, 2022), the plaintiff claimed "that his confinement in lockdown [] delayed his consideration for parole . . . [b]ecause he [was] unable to attend parole hearings." Denying the claim, the Fifth Circuit opined that the plaintiff could not "have a constitutionally protected interest in parole consideration—even if the statute gives him such a right—because he has no statutory interest in parole *release*." *Id.* The court explained:

> Young has not identified a statutory right to early release. "Louisiana parole statutes do not create an expectancy of release or [a] liberty interest in general." *Bosworth v. Whitley*, 627 So. 2d 629, 633 (La. 1993). That deficiency is fatal to Young's claim. "[W]hen a prisoner has no liberty interest in obtaining parole[,] he cannot complain of the constitutionality of procedural devices attendant to parole decisions." *Wansley v. Miss. Dep't of Corr.*, 769 F.3d 309, 312–13 (5th Cir. 2014) (quotation omitted and alteration adopted). In other words, there can be no constitutionally protected interest in parole consideration without a constitutionally protected interest in parole release.
>
> The district court did not err in dismissing Young's due process claim arising from a delay in his parole consideration.

*Id.*

Accordingly, the Court should dismiss these claims.

## 7. Conditions of Confinement

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238

F.3d 660, 664 (5th Cir. 2001) (*quoting Farmer v. Brennan*, 511 U.S. 825 (1994)).  To establish

an Eighth Amendment violation, a prisoner must demonstrate that a prison official was

deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v.*

*Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's

necessities."[19]  *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).  To establish

deliberate indifference, the prisoner must show that the official knew of and disregarded an

excessive risk to inmate health or safety; the official must have been both aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must

have drawn the inference.  *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in

combination when each would not do so alone, but only when they have a mutually enforcing

effect that produces the deprivation of a single, identifiable human need such as food, warmth, or

exercise—for example, a low cell temperature at night combined with a failure to issue

blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted

source omitted).[20]  However, "Nothing so amorphous as 'overall conditions' can rise to the level

---

[19] The deprivation alleged must be, objectively, sufficiently serious.  *Farmer*, 511 U.S. at 834.

This standard is not static: the inquiry is whether the conditions are contrary to "the evolving

standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S.

97, 102 (1976) (quotation marks and quoted source omitted).

[20] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and

exercise have been recognized by courts as basic physical human needs subject to deprivation by

of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

A. Tobacco Smoke and Electronic Cigarette Vapor

Plaintiff claims that Chief Duchesne, Sergeant Shaw, Sheriff Gilley, and Warden Wade exposed him to unreasonable levels of environmental tobacco smoke and electronic cigarette ("e-cigarette") vapors and chemicals.  [doc. #s 1, pp. 8, 13; 9, pp. 1-4, 6].  He filed a grievance concerning the smoke and vapor.  [doc. # 1, p. 8].  On December 16, 2021, Chief Duchesne and Sergeant Shaw responded to his grievance.  *Id.*  Duchesne told Plaintiff he could move to a suicide cell or "go to a dormitory that doesn't buy as many E-cigarettes as the other."  *Id.*  Duchesne added, "We're not going to stop selling them."  *Id.*

Plaintiff moved to "D dorm" to try and avoid the smoke and vapor, but it "was no different than the other dorms."  [doc. #s 1, p. 8; 9, p. 1].  There were "no non-smoking dorms for those who desire[d] not to inhale" smoke and e-cigarette vapor.  [doc. # 1, p. 9].

 "Employees were allowed to use e-cigarettes when in offender housing areas."  [doc. # 1, p. 8].  The non-smoking policy was not enforced.  *Id.*  E-cigarettes were sold in the facility's commissary.  Large amounts of tobacco were smuggled into the facility daily.  *Id.*  Plaintiff alleges that the ventilation system was not properly cleaned, which caused dust to accumulate and caused the smoke and vapor to "linger."  [doc. # 1, p. 14].

The smoke and vapor caused Plaintiff nose bleeds, sleeplessness, headaches, shortness of breath, coughing, chest pain, dizziness, fear, anguish, emotional distress, and a rise in blood

---

conditions of confinement."  *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

pressure which allegedly exposed him to stroke, heart disease, colorectal cancer, and gastrointestinal disorders.  [doc. #s 1, p. 8; 9, p. 3].

The Court should retain Plaintiff's Section 1983 claims that Sergeant Shaw, Chief Duchesne, Sheriff Gilley, and Warden Wade exposed him to unreasonably high levels of e-cigarette vapor and tobacco smoke.  *See generally Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Murrell v. Casterline*, 307 F. App'x 778, 779 (5th Cir. 2008); *Bruce v. Little*, 568 F. App'x 283, 286 (5th Cir. 2014); *Black v. Concordia Par. Det. Ctr.*, 607 F. App'x 440, 441 (5th Cir. 2015).

The Court should also retain Plaintiff's claims that Chief Duchesne, Warden Wade, and Sheriff Gilley were negligent in failing to create a non-smoking policy and failing to control the introduction of tobacco.  [doc. #s 1, p. 17; 9, pp. 3-4, 6-7].

B. Mold, Dust, and Mildew

Plaintiff claims that "the ceilings and shower areas [were] practically covered with black toxic mold, dust, and mildew."  [doc. #s 1, p. 9; 9, p. 5].  "The shower area was infested with so much black mold, a piece of tin 10 feet by 10 feet was placed to cover it."  [doc. # 9, p. 5].  "However, the mold [grew] beyond the tin and partially cover[ed] the floors and walls."  *Id.* The exhaust vents are clogged.  [doc. # 1, p. 9].  He "experienced constant sneezing, [a] runny nose, itchy eyes, skin rash, throat irritation, fever, headaches, and sleeplessness."  *Id.*  He is "concerned about his current and future health; especially respiratory complications."  *Id.*

To the extent Plaintiff raises a constitutional claim, he faults only the RPPJ, Secretary LeBlanc, and the LDC.[21]  [doc. # 9, p. 5].  The undersigned addresses Plaintiff's claims against these defendants in a separate section below.

Plaintiff does seek relief under state law, claiming that Sheriff Gilley was negligent in failing to "create protocol for the eradication of toxic black molds and mildew."  [doc. # 1, p. 17].  He also claims that Warden Wade was negligent in failing to remedy the black mold and mildew.  [doc. # 9, p. 7].  Considering these allegations in conjunction with Plaintiff's allegations concerning environmental tobacco smoke and e-cigarette vapor, the Court should retain these claims against Sheriff Gilley and Warden Wade under its supplemental jurisdiction.  *See Smith v. Leonard*, 244 F. App'x 583 (5th Cir. 2007) (allegations by state prisoner that prison official's failure to remove allegedly toxic mold from prison amounted to gross negligence, and that prisoner suffered symptoms of headaches, sinus problems, trouble breathing, blurred vision, irritated eyes, and fatigue stated an Eighth Amendment § 1983 claim).

C. Recreation and Exercise

Plaintiff alleges that "he was denied adequate time for outdoor recreation and exercise." [doc. # 1, p. 10].  Faulting Sheriff Gilley, he alleges he was "allowed by policy and practice one

---

[21] Plaintiff broadly faults "defendants," but he does not provide any individualized allegations. [doc. # 1, p. 14].  The Court disregards bare assertions of collective responsibility unsupported by concrete factual allegations.  *See Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him.  The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm.").

hour per month of outside recreation." [doc. # 9, p. 4]. It was difficult for him to exercise inside because "dormitories [were] filled with bunks[.]" *Id.* "On occasions, Plaintiff would" exercise with makeshift equipment indoors. *Id.* Plaintiff claims that Sheriff Gilley's policy constituted deliberate indifference to Plaintiff's mental and physical health. *Id.* "The lack of adequate exercise caused" Plaintiff fatigue, soreness, aches, and mental anguish. *Id.* at 5. Gilley allegedly "should have known the deprivation of exercise would have adverse effects on Plaintiff's health . . . ." *Id.* at 4-5.

While recreation and exercise are certainly identifiable life needs,[22] Plaintiff does not allege that he could not exercise or engage in recreation inside. *See Ruiz*, 679 F.2d at 1152 ("Of particular importance in determining an inmate's need for regular exercise are the size of his cell, the amount of time the inmate spends locked in his cell each day, and the overall duration of his confinement.") (internal footnotes omitted). Plaintiff concedes that he was able to exercise "on occasion" in his dormitory with makeshift equipment. In addition, his confinement at RPDC continued only approximately 7-8 months.[23] Overall, he does not claim that his inability to

---

[22] *See Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), amended in part, vacated in part, 688 F.2d 266 (5th Cir. 1982) (favorably citing other courts' opinions that "inmates need regular exercise to maintain reasonably good physical and psychological health.").

[23] *See Lewis v. Smith*, 277 F.3d 1373 (5th Cir. 2001) (finding a related claim "meritless because it [was] premised on the erroneous assumption that [the plaintiff] had an absolute right to exercise or recreation."); *Carter v. Hubert*, 452 F. App'x 477, 478-79 (5th Cir. 2011) ("In regard to his unconstitutional conditions of confinement claims that his placement in a restrictive cell program for seven days at a time, for a total of 26 days, resulted in a lack of exercise, deprivation of

enjoy time outside constituted an extreme deprivation of a minimal civilized measure of life's necessities or a substantial risk of serious harm. The undersigned is sympathetic to Plaintiff's concerns, but Plaintiff does not state a claim of constitutional dimension. The Court should dismiss this claim.

D. Odors

Plaintiff claims that inadequate ventilation caused the "stench of feces, urine, and flatus to linger[.]" [doc. # 1, p. 14]. Plaintiff, however, does not specify how often he was exposed to these odors, when he was exposed, or whether he was able to avoid the odors (for example, he does not specify whether the urine and feces odors were confined to lavatories). In this respect, and absent more, he does not describe an extreme deprivation. The Fifth Circuit has indicated that "foul odor[s]" caused by inadequate ventilation systems are "inconveniences of prison life" which do not "amount to the denial of the minimal civilized measure of life's necessities[.]" *Farr v. Rodriguez*, 255 F. App'x 925, 927 (5th Cir. 2007); *see LaVergne v. Stutes*, 2021 WL 2877789, at *5 (5th Cir. July 8, 2021) (opining that odors are "not *per se* violations of the Eighth

_____

meals, and flu-like symptoms due to a severely cold cell, Carter has not demonstrated that prison officials violated his Eighth Amendment rights."); *Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979), on reh'g, 636 F.2d 1364 (5th Cir. 1981) ("Our cases have never held that convicted prisoners have a constitutional right to outdoor exercise."); *Hernandez*, 522 F.3d at 560-61 (finding, where the plaintiff alleged a denial of outdoor and out-of-cell exercise for thirteen months, that even if there was a "fact issue as to whether [the plaintiff] suffered from muscle atrophy, stiffness, loss of range of motion, and depression, there [was] nonetheless no indication these conditions posed a substantial risk of serious harm.").

Amendment.").  The Court should dismiss this claim.

E. <u>Outside Light</u>

Plaintiff alleges: "Dormitory housing units are designed to debilitate.  For example, housing unit windows are painted black . . . It's impossible to ascertain whether it's day or night."  [doc. # 1, p. 10].

Plaintiff does not describe a sufficiently serious deprivation of any identifiable life need during his approximately 8 months at the facility.  He does not allege, for example, that he was deprived of lighting or darkness *inside* the dormitory.  He does not identify any life need of which he was deprived due to his inability to see outside.  The Court should dismiss this claim.

**8. Copying Mail**

Plaintiff claims that the facility copies his confidential/privileged legal mail and retains the originals.  [doc. # 1, pp. 11, 15; 9, pp. 7, 9].

Plaintiff does not state a plausible claim on which relief can be granted because "prison officials may open incoming legal mail to inspect it for contraband."  *Jones v. Mail Room Staff*, 74 F. App'x 418, 419 (5th Cir. 2003) (*citing Brewer v. Wilkinson*, 3 F.3d 816, 820-21 (5th Cir. 1993)).  Similarly, "prisoners do not have a constitutional right to be present when privileged, legal mail is opened and inspected."  *Collins v. Foster*, 603 F. App'x 273, 275 (5th Cir. 2015) (*citing Brewer*, 3 F.3d at 825).

In blunderbuss fashion, Plaintiff alleges that Sheriff Gilley was negligent in several ways, including failing to end the policy or practice of copying and confiscating incoming legal mail.

Plaintiff, however, fails to allege that he suffered any cognizable harm.[24]  He does not explain how he suffered harm from receiving only facsimiles of mailings; otherwise stated, he does not explain why he required the originals.  *See Sandoval v. Fox*, 135 F. App'x 691, 691 (5th Cir. 2005) (affirming dismissal of a plaintiff's claim that guards improperly distributed prison mail because the plaintiff was not deprived of his mail and did not otherwise suffer any actual harm).

The Court should dismiss these claims.

### 9. Books, Periodicals, and Magazines

Plaintiff claims that by policy he was not allowed to purchase books, magazines, or periodicals from noted book stores . . . ."  [doc. # 1, pp. 9-10].  Later in his pleading, he alleges that he was unable to "receive books, magazines, or periodicals of any sort[,]" which allegedly violated his First Amendment right.  His "inability to read books or magazines was debilitating."  *Id.* at 10.  He faults Sheriff Gilley and Warden Wade, alleging that they are responsible for "policy implementation with" respect to books and magazines.  [doc. # 9, p. 9].

In *Beard v. Banks*, 548 U.S. 521, 527 (2006), the plaintiff challenged "a policy "forbidding inmates all access to newspapers, magazines, and photographs . . . ."  The Supreme Court examined whether the policy or regulation was reasonably related to a legitimate penological interest.  *Id.* (*citing Turner v. Safley*, 482 U.S. 78 (1987)).  Similarly, in *Mills v. LeBlanc*, 2022 WL 3287961, at *1 (5th Cir. Aug. 11, 2022), a plaintiff claimed that defendants confiscated "certain items shipped to him through the mail, including photographs, picture catalogues, a novel, and magazines."  The Court explained that inmates "have a First

---

[24] As above, one element of negligence is "actual damage."  *See Harris v. Boh Bros. Constr. Co., LLC*, 2021 WL 2134754, at *11 (La. Ct. App. May 26, 2021).

Amendment right to be free from mail censorship not "reasonably related to legitimate penological interests." *Id.*

Here, the Court cannot analyze this claim without first hearing defendants' proffered reason, if any, for imposing the alleged policy. The Court should therefore retain this First Amendment claim.

## 10. Correspondence

Plaintiff claims that he was by policy "prohibited from corresponding with family or friends." [doc. # 1, pp. 10, 15]. Specifically, he was not allowed to receive mail from family or friends. *Id.* at 10. He faults Warden Wade and Sheriff Gilley, alleging that their policy violated his First Amendment right. [doc. # 9, pp. 7, 9].

"In determining the constitutional validity of prison practices that impinge upon a prisoner's rights with respect to mail, the appropriate inquiry is whether the practice is reasonably related to a legitimate penological interest." *Brewer v. Wilkinson*, 3 F.3d 816, 824 (5th Cir. 1993). Here, the Court cannot analyze this claim without first analyzing defendants' proffered reason, if any, for imposing the alleged policy. *See Fountain v. Thaler*, 629 F. App'x 592, 594 (5th Cir. 2015) (unpublished) (holding that district court erred by dismissing prisoner's claim that a prison's mail policy violated the First Amendment before the record was "sufficiently developed to determine whether the challenged policy was reasonably related to a legitimate and neutral penological interest."). The Court should therefore retain this First Amendment claim.

## 11. Lack of Mental Health Services

Plaintiff claims that RPDC lacked mental health services. [doc. # 1, p. 10]. He explains that his conditions of confinement during his incarceration for over twenty-three years at different facilities have caused him emotional distress and anxiety. [doc. #s 1, p. 11; 9, p. 8].

He "may be in need of mental health care[,]" but "due to the lack of mental health services" at RPDC, he "has no way to confirm his belief that he is in need of mental health care." *Id.*

In December 2021, when Plaintiff sought mental health care for spontaneous crying episodes, a nurse told him that RPDC did not "have that here" and that he would "probably have to be transferred." [doc. # 9, p. 9]. He faults Sheriff Gilley, alleging that Gilley "negligently failed to secure mental health services."[25] [doc. #s 1, p. 17; 9, p. 9].

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (*quoting Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Plaintiff does not allege that Sheriff Gilley affirmatively participated in any of the above acts or omissions or that there was a sufficient causal connection between Gilley's conduct and any alleged constitutional violation.[26] Instead, Plaintiff essentially pleads only vicarious

---

[25] Plaintiff also appears to fault the RPPJ. The undersigned addresses the RPPJ separately.

[26] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S.*

liability.  *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff

Belt's employees cannot be imputed to the sheriff individually . . . ."); *Sanchez v. Moore*, 2021

WL 5913305, at *1 (5th Cir. Dec. 14, 2021) ("His conclusory assertions that Sifuentes was liable

in his role as a supervisor because he did not get involved with the law library policies or the

issuance of a medical pass do not establish an affirmative participation in the denial of his rights

or the implementation of unconstitutional policies by Sifuentes.").

For claims of failure to promulgate policy, a "plaintiff ordinarily must show [a] pattern of

similar constitutional violations, because without notice of prior constitutional violations, a

supervisor can hardly be said to have acted deliberately indifferent."  *Grant v. LeBlanc*, 2022

WL 301546, at *5 (5th Cir. Feb. 1, 2022).  Plaintiff here does not allege a pattern of similar

constitutional violations.  He does not, for example, describe or elaborate on others' similar

experiences.[27]  *See Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)

---

*Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the

Defendants in their individual capacities, Salcido must show that they were either personally

involved in the constitutional violations alleged or that their wrongful actions were causally

connected to the constitutional deprivation.").

[27] For conduct to be sufficiently widespread, it must have "occurred for so long and with such

frequency that the course of conduct demonstrates the governing body's knowledge and

acceptance of the disputed conduct."  *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir.

1984), *on reh'g*, 739 F.2d 993 (5th Cir. 1984).  The pattern requires "similarity and specificity;

'[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to

the specific violation in question.'"  *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th

(observing that a description of a policy or custom cannot be conclusory and finding the following conclusory: allegations that a police department disregarded the rights of other African American citizens; *Clark v. Thompson*, 850 F. App'x 203, 207 (5th Cir. 2021) ("'I was treated unprofessionally' plus 'eighty-two generic complaints' does not equal facts that plausibly show a single comparable incident that would support an inference of a specific custom of violating constitutional rights.").

Plaintiff also does not allege that Sheriff Gilley implemented an explicit unconstitutional policy that deprived him of constitutionally adequate medical care. *See Alderson*, 848 F.3d at 421.

Finally, as above, Plaintiff briefly claims without elaboration that Sheriff Gilley was negligent in failing "to secure mental health services." [doc. # 1, p. 17]. This claim is conclusory because he does not plausibly allege how defendant's inaction meets the elements of a negligence claim (set forth above in a separate section). *See Gressett*, 779 F. App'x at 261 ("Gressett's negligence pleadings also fail to state a claim because his complaint only contains oblique references to the police department's and the officer's negligence without outlining the elements for such a claim under Louisiana law."). He does not allege that defendant had any specific legal duty to act how he claims defendant failed to act. *See Duncan*, 863 F.3d at 409

---

Cir. 2009) (*quoting Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005)). "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (*quoting McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir. 1989)).

(explaining that a plaintiff must show that the defendant must conform to a "specific standard" to properly plead a negligence claim). As in *Gressett*, Plaintiff presents only "bare references to negligence[,]" which is insufficient to state a plausible claim. *Gressett*, 779 F. App'x at 261.

Accordingly, the Court should dismiss these claims against Sheriff Gilley.

**12. Medical Care**

Plaintiff mentions—without explanation and seemingly as an afterthought—that Warden Wade failed to render medical care: "Wade's inactions further exhibited deliberate indifference to Tilmon's serious medical needs . . . ." [doc. # 9, p. 7]. This ostensible claim follows First Amendment and conditions-of-confinement allegations, and it precedes other First Amendment allegations. In other words, Plaintiff provides no context. The Court should dismiss this wholly formulaic claim.

13. **RPPJ**

Plaintiff claims that the RPPJ: "(1) failed to provide the necessary equipment to remove toxic black molds; (2) [failed to train] staff in recognizing symptoms associated with mental illness[;] [and] (3) failed to provide a good and sufficient jail." [doc. # 1, p. 17]. He also faults RPPJ for cracks in the doors of the dormitories which allegedly allowed snakes, vermin, and insects to enter. [doc. # 9, p. 5].

Under federal law, a parochial or municipal governing authority may not be held liable for a civil rights violation under theories of respondeat superior or vicarious liability. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978); *Evett v. DETNTFF,* 330 F.3d 681, 689 (5th Cir. 2003). Rather, under *Monell*, a plaintiff must demonstrate "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v.*

*City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002) (*citing Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001)); *see O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985) (*applying Monell* to a claim against a Louisiana police jury).

Here, Plaintiff does not allege that RPPJ had actual or constructive knowledge of any of his allegations.

Next, under Louisiana law, a police jury has "no responsibility over the daily operation of" the facility. *O'Quinn v. Manuel*, 773 F.2d 605, 609 (5th Cir. 1985). "The administration of the jails is the province of the sheriff." *Id.* The "sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for, fed and clothed." *Id.* However, state law does require a police jury to "provide a good and sufficient jail . . . ." LA. REV. STAT. § 33:4715. Specifically, "The governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons." LA. REV. STAT. § 15:702. "Where a municipal body is vested with this sort of fiscal obligation to a jail, its liability for insufficient funding or maintenance will depend on its knowledge of conditions at the jail." *O'Quinn*, 773 F.2d at 609.

Here, Plaintiff does not allege that RPPJ failed to adequately fund RPDC or maintain RPDC's physical structure. *See id.* At best, he mentions cracks under doors (an irksome yet exceedingly common condition in most structures), but the gravamen of his claim appears to be the failure to eradicate pests rather than the physical maintenance of the facility.

Even assuming Plaintiff did allege that RPPJ failed to maintain the facility, he does not allege that RPPJ had actual knowledge of any of his allegations. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) ("Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information."). Nor does Plaintiff plausibly allege that RPPJ had constructive knowledge. "Constructive knowledge may be attributed to the

governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id.*  As above, RPPJ is not responsible for administering RPDC on day-to-day basis. Even if it was, Plaintiff does not allege that his conditions of confinement or the staff's failure to recognize symptoms of mental illness were a subject of prolonged public discussion or of a high degree of publicity.[28]

The Court should dismiss Plaintiff's claims against RPPJ.

### 14. LDC and Secretary LeBlanc in His Official Capacity

Plaintiff claims that the LDC and Secretary James LeBlanc failed to monitor or supervise Sheriff Gilley and the RPPJ.  [doc. #s 1, p. 16; 9, p. 5].  He also claims that the LDC and Leblanc approved his transfer to RPDC "with full knowledge that" RPDC sold e-cigarettes and cigarettes. [doc. # 9, p. 6].

Liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the Constitution.  "[N]either a State nor its officials acting in their official capacities

---

[28] *See Clark v. Thompson*, 2021 WL 911293, at *5 (5th Cir. Mar. 9, 2021) ("Clark's "complaint invites no more than speculation that any particular policymaker, be it the chief of police or the city commission, knew about the alleged custom," or that there are any further incidents that could evince the existence of such a custom.  As such, he has failed to state a § 1983 claim against the City.").

are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).[29]

Thus, the State of Louisiana is not a "person" under Section 1983.

Further, "State agencies . . . are not 'persons' within the meaning of the statute." *Lumpkins v. Off. of Cmty. Dev.*, 621 F. App'x 264, 268 (5th Cir. 2015) (*quoting Will*, 491 U.S. at 71). The LDC is a state agency. Thus, it is not a "person" under Section 1983. *See Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) ("The State and [Department of Public Safety and Corrections] are not persons . . . .").

Secretary LeBlanc, in his official capacity, also does not qualify as a "person" under Section 1983. "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official . . . ." *Id.* The State of Louisiana employs LeBlanc.

Accordingly, the Court should dismiss Plaintiff's claims against the LDC and Secretary LeBlanc in his official capacity.

## 15. Secretary LeBlanc in His Individual Capacity

As above, "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d

---

[29] "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Id.* (internal quotation marks and quoted sources omitted).

924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (*quoting Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, as to the second prong of the standard above, Plaintiff does not allege that LeBlanc promulgated or implemented any unconstitutional policy, practice, or custom at RPDC. Even assuming he did, he would perforce seek relief against LeBlanc in his official capacity; however, LeBlanc is (as explained above) unamenable to these claims against him in his official capacity.

As to the first prong of the standard above, Plaintiff does not allege that Secretary LeBlanc affirmatively participated in any specific acts or omissions or that there was a sufficient causal connection between LeBlanc's conduct and any alleged constitutional violation. Plaintiff does allege that he directed "numerous grievances" to LeBlanc; however, he does not specify what he stated in his grievances or which of his many allegations he presented to LeBlanc. [doc. #9, p. 5]. Instead, he vaguely states that he "filed numerous grievances in regards to these issues and others." [doc. # 9, p. 5]. While he also states that he notified LeBlanc of "conditions[,]" he does not specify which of the several conditions of confinement claims he presented to LeBlanc. [doc. #s 1, p. 6; 9, pp. 5-6]. He goes on to mention several of his varied claims but only in the context of his allegation that LeBlanc failed in an unidentified statutory duty to supervise the RPPJ. [doc. # 9, pp. 5-6].

Plaintiff also suggests that LeBlanc was "on notice via *Tilmon v. Chairman, et al.*" of his environmental tobacco smoke and e-cigarette allegations. [doc. # 9, p. 6]. Plaintiff is

41

referencing *Terry Dale Tilmon v. Chairman of the Union Parish Detention Center Commission, et al.*, 3:21-cv-4037 (W.D. La. 2021).  In that action, however, Plaintiff did not raise any claims concerning tobacco smoke or e-cigarette vapor at RPDC; rather, his claims concerned Union Parish Detention Center.  *Id.*

Next, Plaintiff claims that LeBlanc failed to enforce a contractual agreement between the LDC and RPPJ.  [doc. # 9, pp. 5-6].  However, Plaintiff does not allege that he was a party to the contract.  "[I]t is obvious that an individual cannot be liable for breach of a contract to which he is not a party."  *B-G & G Invs. VI, L.L.C. v. Thibaut HG Corp.*, 2008-0093 (La. App. 4 Cir. 5/21/08).  The Court should dismiss this claim.

Plaintiff also faults LeBlanc for transferring him *to* RPDC.  [doc. # 9, p. 6].  However, the Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement.  *Taylor v. Jagers*, 115 F. App'x 682, 684 (5th Cir. 2004).

Finally, Plaintiff claims that LeBlanc failed to investigate his grievances.  [doc. # 9, p. 6].  As above, though, allegations that a defendant violated a plaintiff's "constitutional rights by failing to investigate his grievances fall[s] short of establishing a federal constitutional claim.".  *See Geiger*, 404 F.3d at 373-74.

## <u>Recommendation</u>

For the reasons above, **IT IS RECOMMENDED** that the following claims filed by Plaintiff Terry Dale Tilmon be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted:

○ that Lieutenant Nicole Soignier, Sergeant Ethan Soignier, and Chief Duchesne conspired in retaliation to target him for drug testing without reasonable suspicion;

○ that Sergeant Ethan Soignier retaliated;

○ that on March 21, 2022, Shaw "had [Plaintiff] sign a property release form to

release his watch";

○ that Plaintiff was denied procedural due process in relation to his confiscated or destroyed property;

○ that Sergeant Shaw and Chief Duchesne negligently failed to secure Plaintiff's property with notifications that the property was approved to be sent home;

○ that on March 11, 2022, Chief Duchesne told Plaintiff he had ten days to send his watch home;

○ that on March 31, 2022, Sergeant Shaw "had" Plaintiff "sign a property release form to release his watch" without first affording him an administrative hearing;

○ that Plaintiff was denied equal protection of the law;

○ that Warden Wade did not respond to satisfactorily to grievances;

○ all claims against Regional Disciplinary Board, the Louisiana Department of Corrections, the Richland Parish Police Jury, and Secretary James LeBlanc;

○ that on November 15, 2021, Nicole Soignier falsely charged him via rule violation report with contraband;

○ that Plaintiff was denied adequate time for outdoor recreation and exercise, that inadequate ventilation caused foul odors, and that housing unit windows were painted black;

○ that legal mail was copied and confiscated;

○ that RPDC lacked mental health services; and

○ that Warden Wade failed to render medical care.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 20th day of March, 2023.

Kayla Dye McClusky
United States Magistrate Judge