# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **TERRY DALE TILMON** | **CIV. ACTION NO. 3:22-05896 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **NICOLE SOIGNIER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), is a motion for summary judgment [doc. # 30] filed by Defendants, Sheriff Gary Gilley, Chief Micah Dufresne (incorrectly sued as "Chief Duchesne"), and Warden Tyler Wade. The motion is opposed. For reasons detailed below, IT IS RECOMMENDED that Defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART, and that Plaintiff Terry Dale Tilmon's federal and state law claims for exposure to mold and mildew (only) be DISMISSED WITH PREJUDICE.

## Procedural History

Plaintiff Terry Dale Tilmon ("Tilmon") was a Louisiana Department of Corrections ("DOC") inmate,[1] who was housed at the Richland Parish Detention Center ("RPDC") for almost eight months from October 22, 2021, until June 15, 2022. On November 4, 2022, Tilmon filed the instant pro se civil rights complaint under 42 U.S.C. § 1983 against various RPDC officials, including: Lieutenant Nicole Soignier, Sergeant Ethan Soignier, Sergeant Rebecca Shaw, Chief Duchesne, Sheriff Gilley, Richland Parish Police Jury ("RPPJ"), Secretary James

---

[1] In August 2023, Tilmon was released from custody after serving more than twenty-three years at various facilities around the state. *See* Notice of Address Change [doc. # 25]; Compl.

LeBlanc, Warden Wade, the DOC, and the Regional Disciplinary Board.  (Compl.)  Tilmon alleged that, during his tenure at the RPDC, he was subjected to unconstitutional conditions of confinement, retaliation, and discrimination.  *Id.*  In response to a court order, Tilmon filed an amended complaint on February 9, 2023.  (Mem. Order [doc. # 8]; First Amend. Compl. [doc. # 9]).

On March 20, 2023, the undersigned conducted an initial review of Tilmon's pleadings and recommended dismissal of various claims and parties.  (Report and Recommendation ("R&R") [doc. # 10]).[2]  That same date, the Court issued a service order for the remaining Defendants.  (Service Order [doc. # 11]).

On June 12, 2023, the remaining Defendants file a motion for partial dismissal for failure to state a claim upon which relief can be granted.  (M/Partial Dism. [doc. # 16]).

Tilmon filed his opposition to the motion to dismiss on July 25, 2023, and contemporaneously filed a Second Amended Complaint ("SAC") that pared down his claims and Defendants.  (Opp. Memo. [doc. # 20]; SAC [doc. # 21]).  Specifically, Tilmon focused his allegations upon his unwanted and extended exposure to unreasonable levels of environmental tobacco smoke ("ETS"), E-cigarette vapors ("ECV"), plus toxic black mold and mildew while housed at the RPDC.  (SAC).  Tilmon alleged that, as a result of this exposure, he suffered nose bleeds, chest pain, headaches, throat irritation, pain and suffering, mental distress, fear, shock, embarrassment, shortness of breath, constant coughing, sneezing, eye irritation, and increased blood pressure that placed him at risk for other disease processes.  *Id.*  Tilmon seeks damages

---

[2] On April 10, 2023, the District Court adopted the R&R and entered a corresponding judgment. (Judgment [doc. # 12]).

against Defendants Sheriff Gary Gilley ("Gilley" or "Sheriff Gilley"), RPDC Warden Tyler Wade ("Wade" or "Warden Wade"), and Chief Micah Dufresne (incorrectly sued as "Chief Duchesne") ("Dufresne" or "Chief Dufresne") under federal law, 42 U.S.C. § 1983, for violating his Eighth Amendment right to be free from cruel and unusual punishment, and under state law, Louisiana Civil Code Article 2315, for negligence. *Id*.

In the wake of the SAC, the court denied the motion for partial dismissal as moot. (Aug. 7, 2023 Order [doc. # 23]). Later that month, the Court dismissed Tilmon's claims against Defendants Nicole Soignier, Ethan Soignier, and Rebecca Shaw in conformity with the SAC, which omitted those parties. (Aug. 30, 2023 Judgment [doc. # 26]).

Meanwhile, on August 11, 2023, Gilley, Wade, and Dufresne filed their answer to the SAC. (Answer [doc. # 23]). Accordingly, on September 7, 2023, the Court issued a scheduling order that included deadlines for amendment of pleadings, completion of discovery, and the filing of a motion for summary judgment or statement of issues. (Sched. Order [doc. # 27]).

On March 20, 2024, Sheriff Gilley, Warden Wade, and Chief Dufresne (collectively, "Defendants") filed the instant motion for summary judgment seeking dismissal of Tilmon's claims for failure to exhaust administrative remedies and because Tilmon did not have a viable cause of action for alleged exposure to mold or mildew. (MSJ [doc. # 30]).

Tilmon requested and obtained an extension of time until May 15, 2024, to conduct discovery on the issue of exhaustion and to file his opposition to the motion for summary judgment. (M/Ext. of Time [doc. # 32] and Order [doc. # 34]).

On June 7, 2024, Tilmon filed his out-of-time opposition to the motion for summary

judgment.  (Pl. Opp. Memo. [doc. # 35]).  Defendants filed their reply on June 11, 2024. [3]

(Defs. Reply [doc. # 36]). Accordingly, the matter is ripe.

## Summary Judgment Principles

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(b).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by

---

[3] Defendants urge the court to disregard Tilmon's brief because it was filed out of time and because Tilmon failed to show good cause/excusable neglect for his dilatory filing.  The Court sympathizes with Defendants' frustration, but they have not shown any cognizable prejudice as a result of the 23-day delay.  The undersigned had yet to issue a report and recommendation on the pending motion.  Moreover, Defendants promptly availed themselves of the opportunity to file a reply brief.  In addition, no other deadlines are set presently.  Therefore, in light of Tilmon's pro se status and the lack of cognizable prejudice to Defendants, the court will exercise its discretion and give effect to Tilmon's out-of-time brief and associated evidence.  *See Sharkey v. Humphreys Cnty., Mississippi*, Civ. Action No. 18-0017 2019 WL 1338408, at *3 n.2 (N.D. Miss. Mar. 25, 2019) (citation omitted) (excusing pro se plaintiff's untimely response to a summary judgment motion).

pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support his claim, summary judgment is appropriate. *Id.* "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007) (citation omitted).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in his favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Finally, when a movant bears the burden of proof on an issue, he must establish "beyond peradventure[4] all of the essential elements of the claim . . . to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish his right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 14 F.3d 52 (5th Cir. 1993).

---

[4] I.e., beyond doubt.

5

## Law and Analysis

### I.    Administrative Exhaustion

a)    Law

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Exhaustion is mandatory and is required even where the relief sought cannot be granted by the administrative process.  *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted).  All "available" remedies must be exhausted, whether speedy and effective, or not.  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002).  "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules."  *Johnson v. Kukua*, 342 Fed. App'x. 933, 934 (5th Cir. 2009) (citing *Woodford,* 548 U.S. at 89-93).  An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement.  *Id*.

Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies.  *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).  If the court considers evidence beyond the pleadings to resolve the exhaustion issue, then the nonmoving party is entitled to the protections of Rule 56.  *Id.*

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter,* 534 U.S. at 532 (citation omitted).  An inmate is

6

required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). In addition, exhaustion applies to claims brought against defendants in their official and/or individual capacities. *See, e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. App'x. 564 (5th Cir. 2003).

If required by the terms of the prison's grievance procedures, a prisoner must exhaust all steps of a grievance process even if the prison fails to respond to his grievances at an earlier step in the process. *See Wilson v. Epps*, 776 F.3d 296, 302 (5th Cir. 2015) (plaintiff failed to proceed through all three steps of the grievance process; instead, he completed only the first step, and then filed suit when those grievances were not responded to in a timely fashion); *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (because grievance policy did not require plaintiff to object when he failed to receive a response to his initial grievance, he was not required to proceed to the additional steps of the process). Moreover, to the extent that language on the form or policy regarding subsequent step review is phrased in discretionary rather than mandatory terms, the prisoner still must exhaust all "available" steps. *Ates v. St. Tammany Parish*, Civ. Action No. 13-5732, 2014 WL 1457777 (E.D. La. Apr. 15, 2014) (and cases cited therein); *see also Hicks v. Lingle*, 370 F. App'x. 497, 499 (5th Cir. 2010); *Hicks, supra* (inmate required to proceed to second step, even though procedure said only that inmate "may appeal" if dissatisfied with first step response); *Wilson,* 776 F.3d at 300-302 (subsequent steps of grievance process remained unexhausted even though phrased permissively as "may request," and "may appeal"). In short, the courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741,

7

121 S. Ct. 1819, 1825, n.6 (2001).

In 2016, the Supreme Court explained that "[u]nder § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies:  An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."  *Ross v. Blake*, 578 U.S. 632, 642 (2016).  The Court then looked to dictionary definitions of "available," to conclude that an inmate is "required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. (citations omitted).[5]

The Court recognized three circumstances where an inmate's duty to exhaust administrative remedies may be excused, or in statutory parlance, deemed unavailable.  *Id*.  at 643.  First, an administrative procedure is unavailable where officers consistently are unable or unwilling to provide relief to aggrieved inmates.  *Id*. (citation omitted).[6]  Second, exhaustion is not required where an administrative scheme is so opaque that it is unknowable in the sense that

---

[5]  Whether administrative remedies are "available" is a question of law, but the resolution of that question may turn on questions of fact.  *Leggett v. Lafayette*, 608 Fed. App'x. 187, 190 (5th Cir. 2015).

[6]  The Supreme Court provided some examples,

> [s]uppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office, but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In *Booth*'s words: "[S]ome redress for a wrong is presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." So too if administrative officials have apparent authority, but decline ever to exercise it.  Once again: "[T]he modifier 'available' requires the possibility of some relief."  When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.

*Ross,* 578 U.S. at 643 (internal citations omitted).

8

no ordinary prisoner can discern its requirements. *Id*. at 643-44. Finally, the administrative process is rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644.

The Fifth Circuit consistently has held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. *Aguirre v. Dyer*, 233 Fed. App'x. 365 (5th Cir. 2007) (citation omitted); *Simkins v. Bridges*, 350 Fed. App'x. 952, 953-954 (5th Cir. 2009) (citation omitted); *Plaisance v. Cain*, 374 Fed. App'x. 560, 561 (5th Cir. 2010) (citation omitted). Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances." *Dillon*, 596 F.3d at 268 (citations omitted). When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable. *Id*. "If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir. 2008)).

b)  <u>Defendants' Evidence</u>

In support of their motion for summary judgment, Defendants submitted various exhibits, including a declaration from RPDC Warden Alan Cup ("Cupp" or "Warden Cupp"), who averred, in pertinent part, that

- As the warden at RPDC, Cupp has access to all grievances filed by Tilmon.

- Tilmon was a Louisiana DOC inmate during his confinement at the RPDC.

- Louisiana DOC inmates housed at the RPDC, in the custody of the [RPDC], are required to adhere to the RPDC's  administrative remedy procedure ("ARP") process.

9

- The RPDC has a three-step ARP process applicable to DOC inmates, such as Tilmon. All grievances under the RPDC's ARP process must be submitted in writing.

- Tilmon received a copy of RPDC's ARP process and acknowledged receipt of same.

- Cupp reviewed all grievances submitted by Tilmon during his incarceration at the RPDC. Although Tilmon submitted a step one grievance related to ETS, ECV, plus mold and mildew in the prison vents, he did not submit a step two appeal.

- Further, whether or not he received a response to his related grievances, Tilmon was required to submit a third-step grievance to the DOC, if he remained dissatisfied. There is no evidence that he ever did so.

(Alan Cupp Declaration; MSJ, Exh. A [doc. # 30-3]).

Defendants also submitted a declaration from DOC employee, Rhonda Weldon, who averred that,

- She has access to grievances filed by DOC inmates, including those filed by Tilmon.

- She reviewed all grievances filed by Tilmon.

- Tilmon was required to submit a third-step grievance to the DOC, even if he did not receive a response to his related grievances that he filed while incarcerated at the RPDC.

- Although Tilmon filed grievances with the DOC before his incarceration at the RPDC, he did not file any grievances with the DOC for any issues at the RPDC, including ETS, ECV, black mold, mildew, etc.

(Rhonda Weldon Declaration; MSJ, Exh. B [doc. # 30-4]).

In addition, Defendants submitted a one-page excerpt from a larger document that Warden Cupp identified as the RPDC's ARP process. It provides, in its entirety:

**IX.    Complaint Procedure**

**A.** There are three (3) methods [sic] of presenting a complaint about conditions or treatment at RPSO [sic]. The procedures are as follows:

1.    **Formal Grievance Procedure.** All grievances submitted must be done within 30 days of the complaint with the exception of PREA related

incidents. The Formal Grievance procedure is as follows:

a.     The Warden's designee will investigate the allegations made and will respond within fourteen (14) days. The designee will assign a log number for all grievances and each grievance will have a date and time stamped on them.

b.     If you are not satisfied with the response, you may appeal the decision within 5 days of receiving the response. You are to submit a new grievance, along with the designee's response, to the Warden for review.

c.     If you are not satisfied with the Warden's response, you may submit an Administrative Remedy Procedure (ARP) Third Step to be submitted with all documentation of both first and second steps to:

Louisiana Department of Public Safety and Corrections
ARP 'Third Step' Screening officer Capitol Station
Post Office Box 94304
Baton Rouge, Louisiana 70804-9304

a.     [sic] This consists of a formal, written grievance to the Warden's designee.

**All complaints must be written on a complaint form and signed for the complaint to be taken seriously. Forms can be found in each interlock.**

(Defs.' MSJ, Exh. A-1 [doc. # 30-3]).

Finally, Defendants adduced a signed statement from Tilmon, acknowledging his receipt of a copy of the offender grievance procedure process and medical rules upon his arrival at the RPDC.  (Defs. MSJ, Exh. A-2 [doc. # 30-3]).

c)    <u>Tilmon's Response and Evidence</u>

In his opposition brief, Tilmon stated that Defendants refused to respond to his grievances while he was at the RPDC.  Furthermore, they failed to follow the ARP process, rendering it unavailable.  Tilmon attached several grievances to his response.

Tilmon's initial grievance was dated December 14, 2021, and characterized as an

11

"emergency." (Dec. 14, 2021 Grievance; Pl. Opp. Brief, Exh. P-1 [doc. # 35-2]). The grievance stated that Tilmon suffered from hypertension and that it was well known that ETS products, such as E-cigarettes sold at the RPDC, could exacerbate his condition leading to ischemic stroke cancer among other illnesses. Tilmon requested that he not be subjected to "second tobacco vapor or nicotine" and sought compensation for current and future harm. *Id*.

In a response to Grievance "2021-12-09" that was signed and dated on December 16, 2021, Sergeant Rebecca Shaw stated that she and Major Dufresne spoke with Tilmon about the grievance, and Tilmon had agreed to move to D-Dorm, which would be more suitable to him. (Resp. to Grievance; Pl. Opp. Brief, Exh. P-2 [doc. # 35-2]). Tilmon signed and dated receipt of the response on December 17, 2021. *Id*. A space for the offender to request warden review remained blank. *Id*.

In a December 27, 2021 "emergency" grievance, Tilmon itemized roughly twenty unconstitutional conditions of confinement at the RPDC, including exposure to second-hand nicotine vapors, mold, mildew, and dust-covered vents. (Dec. 21, 2021 Grievance; Pl. Opp. Brief, Exh. P-3 [doc. # 35-2]). Under the section entitled, "Specific Relieve [sic] Desired," Tilmon stated that he was invoking the provisions of Louisiana Revised Statute § 15:706(A)(1), *et seq*. *Id*. According to the grievance record, Sergeant Shaw reviewed the grievance on approximately nine occasions between December 28, 2021, and January 21, 2022. *Id*. In a January 11, 2022 notation, Shaw stated, "Multiple complaints, file separate grievance." *Id*.

In a January 10, 2022 grievance, Tilmon asked to be provided with a printout of his grievances, particularly the ones pertaining to his watch and his offender accounts. (Jan. 10, 2022 Grievance; Pl. Opp. Brief, Exh. P-7 [doc. # 35-2]).

12

On January 25, 2022, Sergeant Shaw signed a partially obscured response to a grievance that, from what the court may discern, she determined to be unfounded because the grievance pertained to multiple issues in violation of a single-issue per grievance policy.  (Resp. to Grievance; Pl. Opp. Brief, Exh. P-4 [doc. # 35-2]).  This interpretation of the response is consistent with Tilmon's description of the document in his brief.  *See* Pl. Opp. Brief, pg. 2.  On January 25, 2022, Tilmon acknowledged receipt of the document by his signature.  *Id*.  That same date, he also signed the space requesting a warden's review.  *Id*.

In a grievance dated February 8, 2022, Tilmon wrote that "[l]ast week," a deputy had brought him some documents to sign that he perceived to be responses to grievances.  (Feb. 8, 2022 Grievance; Pl. Opp. Brief, Exh. P-6 [doc. # 35-2]).  The deputy told Tilmon that he would bring him copies, but he never did.  *Id*.  Accordingly, Tilmon asked, among other things, if the respondent could have the deputy bring him the copies.  *Id*.  In a series of notations beginning on February 8, 2022, Sergeant Shaw wrote, *inter alia*, that she would make a copy of Tilmon's grievances.  *Id*.

In a March 11, 2022 grievance, Tilmon asked for copies of his grievances that he had filed regarding his property.  (March 11, 2022 Grievance; Pl. Opp. Brief, Exh. P-9 [doc. # 35-2]).

Finally, in a grievance dated March 16, 2022, Tilmon complained that he was not satisfied about the quality of the drinking water.  (March 16, 2022 Grievance; Pl. Opp. Brief, Exh. P-8 [doc. # 35-2]).  Chief Dufresne noted in the message section that when Sergeant Shaw brought him the response sheet, Tilmon could appeal it to the warden.  *Id*.

d)      Discussion

In their motion, Defendants cite to Tilmon's allegations in his several complaints and the

13

declarations made by Warden Cupp and Rhonda Weldon to argue that Tilmon did not exhaust administrative remedies prior to filing suit. Specifically, they contend that Tilmon never proceeded to steps two and three of the ARP. In response, Tilmon argues that the facility failed to respond to his grievances, which rendered the ARP unavailable.

      i.      *The Existence of an ARP at the RPDC*

Defendants adduced uncontroverted evidence to show that the RPDC had an ARP and that Tilmon received a copy of it.

      ii.      *Initiating the ARP*

In response to Defendants' motion, Tilmon adduced evidence to show that he filed two grievances regarding his ETS, ECV, and mold/mildew exposure: one on December 14, 2021, and a second, omnibus grievance on December 27, 2021.

      iii.      *The Availability of Steps Two and Three*

There is no genuine dispute that Tilmon did not proceed beyond the first step of the ARP as to his December 14, 2021 grievance. As Tilmon explained in his brief,[7] Chief Dufresne and

---

[7] After the amendment to Rule 56, the court now has the latitude to credit unsworn statements at the summary judgment stage. *See Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019) (quotations omitted) ("New Rule 56(c), added in 2010, permits a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial. Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial."); *Lozano v. Davis*, 774 F. App'x 263, 264 (5th Cir. 2019) (reasoning that considering whether a plaintiff's unsworn assertions "could have been presented in an admissible form . . . is particularly relevant where a pro se plaintiff's allegations form his entire response in opposition to summary judgment."); *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) ("The district court dismissed Captain Jamison's report solely because it was not sworn without considering Lee's argument that Captain Jamison would testify to those opinions at trial and without determining whether such opinions, as testified to at trial, would be admissible."); *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("This flexibility allows the court to

Sergeant Shaw responded to his grievance by giving him the choice to move to a suicide cell or to Dormitory D where fewer tobacco products were sold.  Tilmon selected the latter option.

After Tilmon relocated to Dormitory D, however, he soon discovered that it was no better than the other dormitories.  Accordingly, he filed a new,[8] compound grievance on December 27, 2021, which represented a compilation of unconstitutional conditions of confinement at the RPDC.  (Pl. Opp. Brief, Exh. P-3).  On January 25, 2022, Sergeant Shaw, who apparently was the "Warden's designee" under the ARP, rejected Tilmon's December 27, 2021 grievance.  (Pl. Opp. Brief, Exh. P-4).  That same day, Tilmon signed the same response form requesting warden's review.  *Id*.

In a February 8, 2022 grievance, Tilmon complained that, although he had signed some documents that he perceived to be responses to grievances, he had not received copies of those responses.  (Pl. Opp. Brief, Exh. P-6).  Further, there is no indication that the RPDC ever provided Tilmon with a timely copy of Sergeant Shaw's January 25, 2022 response to his December 27, 2021 grievance.  Naturally, this presents an obstacle to Tilmon's ability to proceed to step two of the ARP because the policy requires him to appeal the decision by submitting "a new grievance, *along with the designee's response* to the Warden for review."  (Def. MSJ, Exh.

---

consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record.").

[8] There is evidence that this was a "new" grievance and not an attempt to proceed to the second step of the previous one because the request for warden review portion of the response to original grievance remained unsigned.  (Pl. Opp. Brief, Exh. P-2).  Further, this second grievance was addressed by Sergeant Shaw, not the warden.  *See* discussion, *infra*.

A-1) (emphasis added).[9]

Similarly, under the third step of the ARP, Tilmon was required to write to the DOC and include "all documentation of both first and step steps . . ." *Id*.  Again, however, Tilmon was not provided a copy of the RPDC's first step response, which thwarted his ability to proceed to the second step of the ARP.  Without the requisite documentation, step three of the ARP arguably remained unavailable to him, as well.

As discussed above, the Supreme Court recognized that one of the circumstances where the duty to exhaust administrative remedies may be excused, i.e., deemed unavailable, is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*.[10]  In this case, Tilmon has adduced evidence to show that steps two and three were unavailable to him, thereby excusing his failure to exhaust those steps pursuant to *Ross*, 578 U.S. at

In their reply brief, Defendants argue that Tilmon's receipt of a copy of his grievance is irrelevant.  If he was dissatisfied with the January 25, 2022 grievance response, Defendants argue that Tilmon was required to submit a new grievance by January 30, 2022, in order to proceed to the second step.  (Defs. Reply Brief, pg. 4).  This argument, however, overlooks the

---

[9] This interpretation of the ARP was confirmed by Chief Dufresne who wrote in the message section of one of Tilmon's grievances that Tilmon could appeal to the warden once he received a copy of the response sheet.  *See* March 16, 2022 Grievance; Pl. Opp. Brief, Exh. P-8 [doc. # 35-2].

[10] "Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015).  Moreover, remedies are not available where institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies.  *Aceves v. Swanson*, 75 Fed. App'x. 295, 296 (5th Cir. 2003).

ARP's requirement that a grievant attach a copy of the first-step response to the new grievance. According to Tilmon, RPDC officials failed to provide him with a copy of the response, thereby stymying his ability to advance to the subsequent steps of the ARP. *See Jones v. Blackman*, 2021 WL 1805644, at *1 (W.D. La. Apr. 20, 2021), R&R adopted, 2021 WL 1792140 (W.D. La. May 5, 2021); *Stewart v. Smith*, 2018 WL 3966280, at *5 (W.D. Tex. Aug. 17, 2018) ("Without a decision on a timely-filed Step 1 grievance, there was no 'next step' to which Stewart could advance.").[11] In short, without a response, the remaining steps of the policy were not "capable of use." *See generally Ross*, 578 U.S. at 642 ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'") (citation omitted).

In their declarations, both Warden Cupp and Rhonda Weldon stated that Tilmon was required to submit a third-step grievance to the DOC even if he was not provided with responses to related grievances that he filed at the RPDC. *See* Cupp and Weldon Decls., *supra*. However, no such requirement appears in the ARP. (Defs.' MSJ, Exh. A-1 [doc. # 30-3]). Tilmon also remarked that the ARP did not include any guidance on how to proceed if no response was received at any given step. (Pl. Opp. Brief, pgs. 8-9).

In other words, Defendants are attempting to graft an additional requirement into the

---

[11] *See also Boyd v. Corrections Corp. of Am.*, 380 F.3d 989, 996-97 (6th Cir. 2004) (prison officials' failure to respond to prison grievances rendered administrative remedies unavailable where prison procedure required prisoners to receive a response from the grievance officer before appealing to the warden); *Henderson v. Moore*, 2008 WL 2704674, at *5 (S.D. Tex. Jul. 2, 2008) (explaining that "even if it was necessary for plaintiff to file a Step 2 grievance, the uncontested facts establish that he could not have done so timely because he did not receive a copy of the Step 1 response" and holding that "[u]nder the particular circumstances of this case, the fact that plaintiff never received a copy of the Step 1 response excused any failure to exhaust.") (emphasis in original)).

existing policy: that offenders must proceed to the third step, even if they do not receive a response at a prior step. *See Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) ("Erwin reads an additional requirement into the policies—one requiring prisoners to object in some way if they do not receive a timely interim reply."). However, "[e]xhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them." *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015); *see Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) ("Nothing in the [PLRA] prescribes appropriate grievance procedures or enables judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems" (footnote omitted)).[12]

In sum, after resolving all ambiguities and drawing all permissible inferences in favor of Tilmon, the non-moving party, Defendants have not established beyond doubt that Tilmon failed to exhaust all available administrative remedies before filing this proceeding. Accordingly, they are not entitled to summary judgment as to this affirmative defense.

---

[12] If there were some unwritten policy requiring Tilmon to proceed to step three in the absence of a response to his grievance at the prior steps, there is no evidence that he was made aware of this requirement or that he had an avenue for discovering it. In *Brantner v. Freestone Cnty. Sheriffs Off.*, 776 Fed. App'x 829, 834 (5th Cir. 2019), for example, a prisoner "identified a genuine issue of material fact" by presenting "evidence that he never received the Inmate Rules Handbook." "[H]e requested grievance forms but never received them or any further instruction about deadlines or content necessary to file a grievance." *Id.* The Fifth Circuit concluded: "[t]his evidence, if believed, satisfies the unavailability exception to exhaustion . . . Brantner was 'thwart[ed]' from using prison processes because he was supplied with documents that only partially explained the prison processes." *Id.*; *see Huskey v. Jones*, 45 F.4th 827, 833 (5th Cir. 2022) ("Huskey has presented evidence that he . . . was given documents that only partially explained prison processes. Viewed in the light most favorable to Huskey, this evidence satisfies the unavailability exception under *Ross* because the 'administrative scheme [was] so opaque that it bec[ame], practically speaking, incapable of use' by an 'ordinary prisoner.'").

## II.    Cause of Action for Exposure to Mold or Mildew

Quoting language from this Court's recent decision in another one of Tilmon's many

cases, *Tilmon v. Chairman*, Civ. Action No. 21-4037 (W.D. La.) ("*Tilmon I*"), Defendants urge

the court to dismiss Tilmon's constitutional claim for exposure to mold and mildew on the same

basis.  In *Tilmon I*, the undersigned stated,

> Again, while the undersigned is sympathetic to Plaintiff's complaints, they do not
> rise to a violation of his constitutional rights. "While . . . plumbing problems are
> undoubtedly annoying, they are not actionable under federal law . . . ." *Smith*, 2015
> WL 2066517, at *3 (citing *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982)).
> Furthermore, "leaks, while unpleasant, are not unconstitutional." *Id*. (quoting Bean
> v. Pittman, Civ. No. 14-2210, 2015 WL 350284, at *4 (E.D. La. Jan. 26, 2015))
> (internal quotation marks omitted). And rust and mold, though also unpleasant, do
> not render an inmate's confinement unconstitutional. *Id*. (citing *Eaton v. Magee,
> Civ. Action* No. 2:10–cv–112, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012)
> ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain
> black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*,
> No. 3:11–CV–0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation
> of "excessive amount of black mold in the showers and sinks" was insufficient to
> raise a claim for constitutional violation), adopted, 2011 WL 2214383 (N.D. Tex.
> 25 June 7, 2011); *Reynolds v. Newcomer*, Civ. Action No. 09–1077, 2010 WL
> 234896, at *10 (W.D. La. Jan. 19, 2010) (plaintiff's complaints of "the presence of
> black mold in living areas, eating areas, and shower areas" were found to "rise to
> no more than a de minimis level of imposition with which the Constitution is not
> concerned" (quotation marks omitted)); *McCarty v. McGee*, No. 2:06cv113, 2008
> WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he
> was forced to share with other inmates is polluted and covered in mold and fungus,
> causing him to catch athlete's foot and ringworm, fails to rise to the level of a
> constitutional violation.")); *see also Maddox v. Gusman*, Civ. Action No. 14–2435,
> 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015) (presence of rust and mildew in
> a jail is not a constitutional violation); *Penn v. Jones*, Civ. Action No. 13–0830,
> 2014 WL 31351, at *2 (W.D. La. Jan. 2, 2014) (same).
>         Finally, the undersigned acknowledges that "[s]ome conditions of
> confinement may establish an Eighth Amendment violation in combination when
> each would not do so alone, but only when they have a mutually enforcing effect
> that produces the deprivation of a single, identifiable human need such as food,
> warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). That is not the
> case here. *C.f. Gates*, 376 F.3d at 338 (confinement in "extremely filthy" cells with
> crusted fecal matter, urine, peeling and chipping paint, dried ejaculate, and food
> particles on the walls was unconstitutional). While Plaintiff certainly alleges

> uncomfortable and even unsanitary conditions, they do not have the mutually enforcing effect of depriving him of food, warmth, or exercise. Therefore, even resolving any factual disputes in Plaintiff's favor, he does not establish a violation of his constitutional rights. Accordingly, Defendants are entitled to summary judgment and Plaintiff's conditions-of-confinement claims should be dismissed.

*Tilmon v. Chairman*, Civ. Action No. 21-4037, 2023 WL 5030677, at *12-13 (W.D. La.

July 17, 2023), *R&R adopted,* 2023 WL 5030092 (W.D. La. Aug. 7, 2023).

Tilmon implicitly endeavors to distinguish the holding in *Tilmon I* by pointing to his

combined exposure to ETS, ECV, mold, and mildew in this case. However, in *Tilmon I*, like this

case, Tilmon alleged exposure to e-cigarette and environmental tobacco smoke. *See Tilmon I*.

Nonetheless, the Court found that he had failed to establish an Eighth Amendment violation. *Id*.

The same result necessarily follows here.

Defendants further seek dismissal of Tilmon's state tort law claim for exposure to mildew

and mold. Louisiana[13] applies a duty-risk analysis to determine liability under the facts of a

particular case. *S.J. v. Lafayette Par. Sch. Bd.*, 41 So.3d 1119, 1125 (La. 2010). Under the duty-

risk analysis, a plaintiff must prove five separate elements:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the

---

[13] Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211(1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817 (1938). The parties in this matter implicitly agree that the disputed issues are governed by the substantive law of Louisiana. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Ace American Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5th Cir. 2012) (applied Texas law where neither side disputed that Texas law applied); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed). Moreover, all the parties, the actionable conduct, and Tilmon's injury are all Louisiana-centered.

plaintiff's injuries; and (5) actual damages.

*Id*. (citation omitted).  A plaintiff's failure to meet his burden as to any of the foregoing elements relieves the defendant of liability.  *Perkins v. Entergy Corp.*, 782 So.2d 606, 611 (La. 2001) (citation omitted).

Furthermore, in a toxic mold case, a plaintiff must establish causation on five different levels:

> (i) the presence of mold, (ii) the cause of the mold and the relationship of that cause to a specific defendant, (iii) actual exposure to the mold, (iv) the exposure was a dose sufficient to cause health effects (general causation), and (v) a sufficient causative link between the alleged health problems and the specific type of mold found (specific causation).

*Hooks v. Nationwide Hous. Sys., LLC*, Civ. Action No. 15-729, 2016 WL 3667134, at *13 (E.D. La. July 11, 2016) (citation omitted); *Hill v. GEO Grp., Inc.*, Civ. Action No. 18-1363, 2021 WL 6053783, at *9 (W.D. La. Dec. 21, 2021).  Causation in a mold case is not within common knowledge, and, thus, expert medical testimony is required to establish general and specific medical causation.  *Pratt v. Landings at Barksdale*, Civ. Action No. 09-1734, 2013 WL 5376021, at *7 (W.D. La. Sept. 24, 2013) (citation omitted); *see also Hill*, 2021 WL 6053783, at *9.  While, under certain circumstances, a plaintiff may establish causation by relying on the presumption set forth in *Housley v. Cerise,* 579 So.2d 973 (La. 1991), that path is not available to Tilmon because he has alleged that similar conditions existed in parish prisons throughout the state, including Union Parish, where he was housed previously.  *See Tilmon I.*  In addition, Tilmon did not address Defendants' argument seeking dismissal of his state law claim for exposure to mold and mildew.

Upon consideration, the court finds that Defendants' argument is well taken and that

Tilmon has failed to adduce evidence to support the causation element of his state law tort claim. Therefore, Defendants are entitled to summary judgment as to this claim.

## III.    ETS and ECV

In their motion, Defendants did not seek dismissal of Tilmon's ETS and ECV claims on the merits.  Nonetheless, Tilmon proceeded to discuss the viability of these claims in his opposition brief.  Accordingly, Defendants took the opportunity to argue in their reply brief that Tilmon failed to adduce evidence to show that he was exposed to unreasonably high levels of ETS and E-cigarette smoke.  They stressed that Tilmon simply relied on the allegations in his pleadings to support his claims.

However, Tilmon need not adduce evidence to support claims that Defendants did not challenge in their summary judgment motion.  In any event, this court, and others, have taken judicial notice of a June 2006 report by the United States Surgeon General which concluded that there are *no safe levels of exposure to secondhand smoke.  Williams v. Johnson*, Civ. Action No. 13-0478, 2014 WL 2155211, at *4 (W.D. La. May 22, 2014); *Tilmon v. Keith*, Civ. Action No. 13-3127, 2016 WL 6662470, at *1 (W.D. La. Nov. 10, 2016); *Dardar v. Leblanc*, Civ. Action No. 21-2284, 2023 WL 2484475, at *1 (W.D. La. Feb. 23, 2023), *judgment entered,* 2023 WL 2480844 (W.D. La. Mar. 13, 2023).

As to the subjective element of his ETS claim, the court is obliged to consider factors such as the adoption of a smoking policy, the administration of the policy, and the realities of the prison administration.  *Williams*, 2014 WL 2155211, *5.  Here, Tilmon alleged that Defendants did not adequately enforce the smoking policy at the RPDC.  While Tilmon did not submit this evidence in a declaration or affidavit, he was not required to do so when, as here, Defendants did

not raise the issue in their initial brief.  Furthermore, given Tilmon's status as an accomplished and seasoned (albeit pro se) litigator, there is every reason to expect that he could and would submit requisite evidence in a competent summary judgment format if and when called upon.

In sum, Defendants have not established that they are entitled to summary judgment as to Tilmon's claims related to exposure to ETS and ECV.

## Conclusion

For the above-stated reasons,

IT IS RECOMMENDED that the motion for summary judgment [doc. # 30] filed by Defendants, Sheriff Gary Gilley, Chief Micah Dufresne (incorrectly sued as "Chief Duchesne"), and Warden Tyler Wade be GRANTED IN PART and DENIED IN PART and that Plaintiff Terry Tilmon's state and federal law claims related to exposure to mold and mildew (only) should be DISMISSED WITH PREJUDICE.  FED. R. CIV. P. 56.  IT IS FURTHER RECOMMENDED that Defendants' motion for summary judgment [doc. # 30] should otherwise be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 8th day of July, 2024.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

25